**O**

1
2
3
4
5
6
7
8

# United States District Court
# Central District of California

10

| | |
|---|---|
| CITY OF LOS ANGELES, | Case No. 2:13-cv-9009-ODW(RZx) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS'** |
| CITIGROUP INC.; CITIBANK, N.A.; | **MOTION TO DISMISS [29] AND** |
| CITIMORTGAGE, INC.; CITICORP | **DENYING DEFENDANTS' MOTION** |
| TRUST BANK, FSB; and CITI | **TO STRIKE [30]** |
| HOLDINGS, INC., | |
| Defendants. | |

## I.   INTRODUCTION

This is one of a handful of cases that Plaintiff the City of Los Angeles ("L.A.") has brought against lending institutions under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19.  Defendants in this action are Citigroup Inc.; Citibank, N.A.; CitiMortgage, Inc.; Citicorp Trust Bank, FSB; and Citi Holdings, Inc.  ("Defendants" or "Citi").  L.A. is seeking damages from Defendants for lost property-tax revenue and increased municipal services stemming from foreclosures that are allegedly the result of discriminatory lending practices.

Before the Court is Defendants' Motion to Dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 29.)  The Motion is

based on several grounds including lack of Article III standing, expiration of the statute of limitations, and failure to state a claim.   Also before the Court is Defendants' Motion to Strike Portions of Plaintiff's Complaint.  (ECF No. 30.)  For the reasons discussed below, the Court **DENIES** both Motions.

## II.   FACTUAL BACKGROUND

L.A. filed the Complaint on December 5, 2013, asserting two claims for (1) violating the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, and (2) common-law restitution.  (ECF No. 1.)

According to L.A., Defendants have engaged in discriminatory lending practices that have resulted in a disparate number of foreclosures in minority areas of Los Angeles.  (*See* Compl. ¶ 2.)   Specifically, L.A. alleges that Defendants have engaged in "redlining" and "reverse redlining."  (*Id.* ¶ 4.)  Redlining is the practice of denying credit to particular neighborhoods based on race.  (*Id.* ¶ 4 n.2.)  Reverse redlining is the practice of flooding a minority neighborhood with exploitative loan products.  (*Id.* ¶ 4 n.3.)  The lengthy Complaint includes a regression analysis based on Citi loans issued in Los Angeles.  (*See, e.g.*, *id.* ¶¶ 93–98.)  L.A. alleges numerous statistics based on this regression analysis.  One example is that from 2004 to 2011, an African-American borrower was 2.273 times more likely to receive a "predatory loan" as a white borrower with similar underwriting and borrower characteristics.  (*Id.* ¶ 94.)  Also in the Complaint are confidential witness statements from former employees of Defendants who describe how minorities were allegedly steered toward predatory loans.  (*Id.* ¶¶ 55–86.)

Based on publicly available loan data, L.A. alleges that it has identified 1,200 discriminatory loans issued by Defendants in Los Angeles that resulted in foreclosure.  (*Id.* ¶ 136.)  L.A. expects that number to rise during the course of discovery.  (*Id.* ¶ 136 n.39.)  According to L.A., these discriminatory loans were more likely to result in foreclosure, which in turn diminished the tax base and led to blight in Los Angeles / / /

neighborhoods.  (*Id.* ¶¶ 110–35.)  L.A. seeks to recover lost property-tax revenue as well as expenses incurred for increased municipal services.  (*Id.*)

The instant Motions were filed on February 21, 2014, under an extended briefing schedule.  (ECF Nos. 16, 29, 30.)  The case was transferred to this Court on May 20, 2014.  (ECF No. 42.)  The Court took the Motions under submission on May 28, 2014.  There are at least three related cases filed by L.A. against other lending institutions in the Central District of California seeking to recover the same type of damages for allegedly discriminatory lending practices.  (*City of L.A. v. Wells Fargo*, No. 2:13-cv-9007-ODW(RZx); *City of L.A. v. Bank of Am.Corp.*, No. 2:13-cv-9046-PA(AGRx); *City of L.A. v. JPMorgan Chase & Co.*, No. 2:14-cv-4168-ODW(RZx).)  The Court has already ruled on very similar motions to dismiss and to strike in one of those cases.  *See City of L.A. v. Wells Fargo*, No. 2:13-cv-9007-ODW(RZx), 2014 WL 2206368 (C.D. Cal. May 28, 2014).

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction, which includes the requirement that plaintiffs have standing to bring their claims.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  Moreover, the standards set forth in *Bell Atlantic  Corp. v. Twombly*, 550 U.S. 544 (2007), and  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply in equal force to Article III standing when it is being challenged on the face of the complaint.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *Terenkian v.*

*Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

On the other hand, with a factual Rule 12(b)(1) attack, a court may look beyond the complaint. *See White*, 227 F.3d at 1242–43 (affirming judicial notice of matters of public record in Rule 12(b)(1) factual attack); *see also Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a district court is free to hear evidence regarding jurisdiction). In a factual attack, a court need not presume the truthfulness of the allegations in the complaint. *White*, 227 F.3d at 1242. But courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on resolution of the factual issues going to the merits." *Augustine*, 704 F.2d at 1077 (holding that resolution of factual issues going to the merits requires a court to employ the standard applicable to a motion for summary judgment).

**B.     Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level" and a claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 555, 570.

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint

1    . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250

2    F.3d 668, 688 (9th Cir. 2001).   But a court need not blindly accept conclusory

3    allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v.*

4    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).   Moreover, a court may

5    take judicial notice of matters of public record without converting the motion into one

6    for summary judgment.   *E.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005,

7    1016 n.9 (9th Cir. 2012).

8    **C.     Rule 12(f)**

9         Under Rule 12(f), a court "may order stricken from any pleading . . . any

10   redundant, immaterial, impertinent, or scandalous matter."   The essential function of a

11   Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from

12   litigating spurious issues by dispensing with those issues prior to trial."  *Fantasy, Inc.*

13   *v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517

14   (1994).   Rule 12(f) motions to strike are generally disfavored.  *Bureerong v. Uvawas*,

15   922 F. Supp. 1450, 1478 (C.D. Cal. 1996); *see also Stanbury Law Firm v. I.R.S.*, 221

16   F.3d 1059, 1063 (8th Cir. 2000).

17                            **IV.     DISCUSSION**[1]

18        Defendants move to dismiss the Complaint on a number of grounds—all of

19   which address the sufficiency of the City's allegations with respect to Article III

20   standing, the statute of limitations, and overall ability to state a claim.   As an

21   alternative to dismissal of the entire Complaint, Defendants also move to strike certain

---

22

23   [1]  The Court has already made findings on many of the legal issues in these Motions in denying
similar motions to dismiss and strike in a related case.  *See Wells Fargo*, 2014 WL 2206368.

24   Defendants here raise a couple of new arguments as well as variations on the same arguments in
*Wells Fargo*.  But notably, Defendants do not raise the issue of statutory standing and proximate

25   causation for damages—which were significant arguments in *Wells Fargo*—until their Reply.  *See
Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (noting that "arguments in a reply brief are

26   waived," and a district court does not err in disregarding them).   Thus, the Court does not analyze
those issues in this Order.  Nevertheless, the Court refers the parties to and incorporates its findings

27   in *Wells Fargo* with respect to statutory standing under the FHA and proximate causation.  *See* 2014
WL 2206368, at *6–8.  The allegations in the Complaint in this case are very similar to those in

28   *Wells Fargo*, and the Court finds the analysis is unchanged.

paragraphs as impertinent, immaterial, or scandalous.  The Court addresses each of Defendants' grounds for dismissal and then turns to the Motion to Strike.

**A.     Request for Judicial Notice**

Before reaching the merits of Defendants' Motions, the Court turns first to Defendants' lengthy Request for Judicial Notice.  (ECF No. 31.)  Under Federal Rule of Evidence 201(b), a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Defendants contend that all 54 exhibits attached their Request for Judicial Notice—except for Exhibit 15—are matters of public record.  These exhibits include records from the Los Angeles County Assessor's Office, certified deeds of trust, and reports and records from the Los Angeles City Council.  L.A. substantively objects only to Exhibits 36–45, [2] which include records from the Assessor's Office along with Lexis and Westlaw compilations of property assessment information in a "more readable format."  (*See* ECF No. 36.)  According to L.A., since the Lexis and Westlaw compilations are not presented in the same format as available at the assessor's office their accuracy cannot easily be confirmed.  The Court agrees and disregards the Lexis and Westlaw compilations contained within Exhibits 36–45.  But the Court finds that to the extent it relies on the remainder of Exhibits 1–14 and Exhibits 16–54—which is admittedly very little—the Court **GRANTS** the Request for Judicial Notice.

Exhibit 15 is not a public record, but rather a printout from a news service that Defendants argue contains information that is either generally known or can be accurately and readily determined.  The Court does not rely on Exhibit 15 in its analysis, finding the subject matter—an award given to a program run by Defendants for helping minority-owned small businesses in Los Angeles—irrelevant to the instant

---

[2] L.A. also objects to the Request for Judicial Notice as a whole as inappropriately attempting to argue the facts of the case on a Motion to Dismiss.  The Court addresses Defendants' factual attack of the Complaint in analyzing the substantive grounds for Defendants' Motion to Dismiss.

1    Motions.   Accordingly, the Court **DENIES** the Request for Judicial Notice with
2    respect to Exhibit 15.

3    **B.    Article III Standing**

4         Article III standing requires a plaintiff to plead three elements.  First, a plaintiff
5    must plead an injury in fact, which must be "concrete and particularized" and "actual
6    or imminent."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Second,
7    there must be a "causal connection between the injury and the conduct complained
8    of"—that is the injury must be "fairly traceable" to the challenged conduct.  *Id.*
9    (internal quotations omitted).   Third, it must be likely that plaintiff's injury will be
10   "redressed by a favorable decision."  *Id.* at 561.

11        Here, Defendants claim that L.A. has failed to plead injury in fact and causation
12   for Article III standing, thus necessitating dismissal of the Complaint for lack of
13   subject-matter jurisdiction under Rule 12(b)(1).

14        **1.    Injury in Fact**

15        L.A. alleges that Defendants' discriminatory lending practices have injured it
16   by decreasing property-tax revenue and increasing provision of municipal services.
17   (Compl. ¶¶ 116–30 (property-tax revenue); ¶¶ 131–35 (municipal services).)   But
18   Defendants argue that L.A.'s allegations are insufficient because they are not specific
19   or concrete.  (MTD 9:8–19.)  Furthermore, while repeatedly stating that they are not
20   factually attacking subject-matter jurisdiction (*E.g.*, ECF No. 39 ("RJN Reply") at
21   1:9–11), Defendants cite numerous exhibits in their Request for Judicial Notice that
22   they contend show that L.A. has not been injured.  (MTD 9:20–11:23.)

23        L.A. has properly alleged injury in fact for the purposes of Article III standing
24   on the face of the Complaint.  In *Gladstone Realtors v. Village of Bellwood*, 441 U.S.
25   91, 110–11 (1979), the Supreme Court made clear that "a significant reduction in
26   property values directly injures a municipality by diminishing its tax base, thus
27   threatening its ability to bear the costs of local government and to provide services."
28   / / /

7

The Court finds that it need go no further with respect to L.A.'s alleged injuries of decreased property-tax revenue and increased municipal services.

However, the Court notes that Defendants' reliance on *City of Flagstaff v. Atchison, Topeka & Santa Fe Railway Co.*, 719 F.2d 322 (9th Cir. 1983), is misguided.   Defendants rely on *Flagstaff* for the proposition that an increase in municipal services does not constitute an injury in fact.  (MTD 10:14–22.)  But while the Ninth Circuit in *Flagstaff* found that the costs of public services could not be assessed against a tortfeasor, the court was clear that it was interpreting Arizona law in relation to a negligence claim and acknowledged that a number of exceptions exist including public-nuisance abatement.  719 F.2d at 323.  The holding in *Flagstaff* is entirely inapposite to the case at hand.

Moreover, despite Defendants' own protestations to the contrary, the Court finds that Defendants have also mounted a factual attack on L.A.'s Article III standing.  For example, Defendants point out that L.A.'s overall property-tax revenue increased every year from 1997 to 2009, then decreased by five percent in 2010 and 2011, and then increased again in 2012 with increases also projected for 2013 and 2014.  (MTD 9:20–26; RJN Exs. 2, 7.)  The only conceivable purpose for introducing this evidence is to disprove L.A.'s allegations that it has been injured by decreased property-tax revenue.  That is a factual attack on Article III standing.  Defendants make similar arguments with respect to L.A.'s alleged increase in municipal services by, for example, pointing to L.A.'s budget showing that the Department of Building and Safety and Police Department have decreased expenditures overall since the onset of the recession.  (MTD 10:23–11:4; RJN Exs. 4–5.)

The problem with Defendants' factual arguments with respect to Article III standing is twofold.  First, as explained above, a court must refrain from granting Rule 12(b)(1) motions to dismiss where the defendant disputes the facts underpinning subject-matter jurisdiction and those facts are "inextricably intertwined" with the merits of the plaintiff's claim.  *See Augustine*, 704 F.2d at 1077.  By definition injury

in fact goes to the merits of L.A.'s claims.   In addition, Defendants' proffered evidence does not disprove L.A.'s prima facie showing of injury in fact.   Even if L.A.'s overall property-tax revenue has increased during the relevant time period, L.A. may still have been injured by Defendants' conduct because that property-tax revenue could have been higher absent the discriminatory lending.   Moreover, a decrease in the building-and-safety and police-department budgets during the recession does not eliminate L.A.'s alleged harm for an increase in municipal services. The relevant inquiry is actual expenditures by these departments on remedying the results of blight caused by Defendants' discriminatory lending practices.

The Court finds Defendants' facial and factual attacks of L.A.'s injury-in-fact allegations unavailing.

### 2.   Causation

Next, Defendants argue that the causation requirement of Article III standing is not met because a series of "speculative inferences must be drawn" to connect L.A.'s alleged injuries to Defendants' challenged conduct.   (MTD 12:3–11.)   According to Defendants, L.A.'s theory of causation is too attenuated because it ignores a "long list" of discretionary decisions by third parties.   (*Id.*)   On the other hand, L.A. contends that Defendants' description of the line of causation is too long.   L.A. articulates the causal chain as having only three parts: (1) Defendants engaged in discriminatory lending practices, (2) that resulted in foreclosures, (3) which in turn caused a reduction in property values that diminished the tax base and increased the need for city services.   (MTD Opp'n 7:5–8.)   The City then points to specific examples in the Complaint that support its theory of causation.   (*Id.* at 7:5–8:18.)

The Court finds that L.A. has adequately pleaded causation for the purposes of Article III standing.   "To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'"   *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984)).   But a

causal chain "does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'" *Id.* (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)).

L.A. relies on a regression analysis in its lengthy Complaint to support its claims and theory of causation.  The regression analysis is based on publicly available loan data.  (Compl. ¶ 136.)   Supporting the first link in L.A.'s proffered causal chain—Defendants' discriminatory lending practices—are statistics such as from 2004 to 2011 an African-American borrower was 2.273 times more likely to receive a predatory loan as a white borrower with similar underwriting and borrower characteristics.  (*Id.* ¶ 94.)   As for the second link—discriminatory loans resulted in foreclosures—L.A. alleges, for example, that a Citi loan in a predominantly African-American or Latino neighborhood is 4.774 times more likely to result in foreclosure than a Citi loan in a predominantly white neighborhood.  (*Id.* ¶ 102.)  Also, a predatory loan made to an African-American is 1.952 times more likely to be foreclosed on than a non-predatory loan to a white borrower.  (*Id.*)  These foreclosures are then alleged to have caused a reduction in property values that diminished the tax base (*Id.* ¶¶ 116–30) and created an increased need for city services (*Id.* ¶¶ 131–35), which demonstrate the third and final link in the causal chain.  *C.f. Gladstone*, 441 U.S. at 110–11.

In their Motion, Defendants attempt to break the causal chain by arguing that too many independent parties have to act between Defendants' challenged conduct and L.A.'s alleged harm.  But "[w]hile . . . it does not suffice if the injury complained of is the result of the independent action of some third party not before the court, that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (internal quotations and citations omitted).   The Court finds that many of the independent actions that Defendants contend defeat causation could plausibly be produced by or the result of Defendants' challenged conduct.   For instance, Defendants argue that a county

assessor—an independent third-party actor—must decide to decrease the assessment of a property due to foreclosure as opposed to some other factor to satisfy causation. (MTD 13:19–27.)  This is true.  But at this stage of the litigation, the Court finds L.A.'s allegations sufficient to show that Defendants' challenged conduct was determinative or had a coercive effect on lowering a property's assessment.

L.A.'s causal chain will be subject to proof throughout this litigation, but the pleading standards for Article III standing are not so burdensome that L.A. must dispel every alternative that might break the causal chain.  L.A. must be afforded an opportunity to conduct discovery and obtain more property-specific information to meet its burden of actually proving its claims—including causation.  Moreover, to the extent that Defendants are once again mounting a factual attack on Article III standing, the Court refers the parties to its injury-in-fact analysis.  Article III causation—like injury in fact—is inextricably intertwined with the merits of L.A.'s claims, so factual disputes regarding causation should not be resolved on a Rule 12(b)(1) motion to dismiss.  *Augustine*, 704 F.2d at 1077.

Furthermore, the Court is unpersuaded by Defendants' reliance on the facts of *Maya* and *City of Birmingham v. Citigroup Inc.*, No. CV-09-BE-467-S, 2009 WL 8652915 (N.D. Ala. 2009).  In *Maya*, the Ninth Circuit found that homeowners lacked standing to sue developers for injuries allegedly caused by the developers' practice of marketing and financing neighboring homes to individuals at a high risk of foreclosure.  658 F.3d at 1072 ("[P]laintiffs have not established how defendants' actions *necessarily* resulted in foreclosure . . . .").  But the *Maya* court also held that the district court erred in not granting leave to amend because the homeowners proffered an expert report that allegedly distinguished the effect of the developers' actions from general economic influences.  *Id.* at 1072–73.  The allegations in *Maya* were much more generalized than the allegations in the Complaint here, and L.A. alleges that Defendants' contribution can be parceled out from the losses attributable

/ / /

1   to non-Citi foreclosures and other causes through Hedonic regression analysis.  (*See*
2   Compl. ¶ 125.)

3     Moreover, while the court in *City of Birmingham* dismissed similar claims for
4   lack of standing, the opinion is devoid of detail regarding the allegations in the
5   complaint and makes no mention of a regression analysis or confidential witness
6   statements.  *See* 2009 WL 8652915, at *3–4.  More persuasive are the more recent
7   district court cases where courts have found that municipalities have Article III
8   standing at the pleadings stage to sue banks for discriminatory lending practices based
9   on similar statistical evidence and allegations specific to the defendant banks.  *See*
10   *Dekalb Cnty. v. HSBC North Am. Holdings, Inc.*, No. 1:12-CV-03640-SCJ, 2013 WL
11   7874104, at *7 (N.D. Ga. Sept. 25, 2013) (holding that government and industry
12   findings along with empirical data raised the pleadings above the speculative level to
13   meet Article III's "fair traceability" requirement); *Mayor & City Council of Balt. v.*
14   *Wells Fargo Bank, N.A.*, No. JFM-08-62, 2011 WL 1557759, at *3–6 (D. Md.
15   Apr. 22, 2011) (holding that the third amended complaint plausibly alleged standing
16   with property-specific allegations and specific illegal lending practices identified);
17   *City of Memphis v. Wells Fargo Bank, N.A.*, No. 09-2857-STA, 2011 WL 1706756, at
18   *9 (W.D. Tenn. Mar. 4, 2011) (holding that plaintiffs' injuries were fairly traceable
19   because they did not allege that "lending practices resulted in a host of social and
20   political ills plaguing entire sections of the community," but rather that defendants
21   "targeted individual property owners with specific lending practices (reverse-
22   redlining), resulting in specific effects (foreclosures and vacancies) at specific
23   properties, which in turn created specific costs (services and tax revenue) for local
24   government").  L.A.'s allegations are extremely detailed and specific to Defendants'
25   lending practices.  L.A. has already identified through publicly available loan data
26   1,200 discriminatory loans issued by Defendants that have resulted in foreclosures in
27   Los Angeles.  (Compl. ¶ 136.)  L.A. also anticipates that it will learn of more loans
28   over the course of discovery.  (*Id.* ¶ 136 n.39.)

For the reasons discussed above, the Court finds that the allegations in the Complaint are sufficient to establish causation at this stage of the litigation and support Article III standing.

**C.    Statute of Limitations**

Defendants also argue that the statute of limitations on L.A.'s FHA claim has already run.  Under the FHA, claims must be filed "not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice . . . ."  42 U.S.C. § 3613(a)(1)(A).

According to Defendants, the statute of limitations period begins to run at the time that each allegedly discriminatory loan originated and L.A. fails to specifically identify a discriminatory loan that was originated within the limitations period.  L.A. alleges that the challenged conduct began "since at least 2002"; therefore Defendants contend that the statute of limitations has long expired with respect to many of the allegedly discriminatory loans including the ten loans specifically identified in the Complaint.  The Complaint was filed on December 5, 2013; thus only loans originating after December 5, 2011, lie within the statute of limitations.  Moreover, Defendants argue that L.A. cannot invoke the continuing violations doctrine because each loan origination is a "discrete act" and the continuing violations doctrine has only limited application.  (MTD 16:23–17:4.)  Furthermore, L.A. cannot avoid the statute of limitations by alleging that it continues to be impacted by violations of the FHA that occurred before December 2011.  (*Id.* at 18:17–28.)

On the other hand, L.A. claims that Defendants disregard pertinent language in the Complaint.  (MTD Opp'n 12:6–9.)  L.A. acknowledges that the statute-of-limitations inquiry focuses on when the alleged discriminatory conduct terminated and not when L.A.'s injuries occurred.  *See Garcia v. Brockway*, 526 F.3d 456, 464 (9th Cir. 2008) (holding that the FHA's limitations period does not start when the aggrieved person is injured, but rather at the time "the occurrence or termination of an alleged discriminatory housing practice" occurs).  But according to L.A., the

allegations in the Complaint demonstrate an "unbroken eight year pattern and practice of issuing a variety of predatory mortgage loans." (MTD Opp'n 11:23–25.)

Based on the allegations in the Complaint, L.A. has not run afoul of the statute of limitations. Where a plaintiff challenges not merely a single incident of conduct that violates the FHA, but rather a pattern or practice of discrimination, the statute of limitations runs from the last asserted occurrence. *See Havens Realty*, 455 U.S. at 380–81. This is known as the "continuing violation doctrine." *Id.* at 380. Here, L.A. repeatedly alleges in the Complaint that Defendants have engaged in an "unlawful pattern and practice" of mortgage discrimination and that Defendants "adapted to changing market conditions" while continuing to discriminate against minority borrowers in Los Angeles. (*See, e.g.*, Compl. ¶¶ 3, 8, 39, 50–54.) The exact type of loan issued to minority borrowers may have changed, but L.A. alleges the loans issued to minorities continued to be more high-risk than loans issued to white borrowers. (*See, e.g.*, *id.* ¶¶ 50–54.) Moreover, confidential witness statements in the Complaint allege discriminatory conduct through at least 2011. (*Id.* ¶¶ 55–86.)

Defendants' rejection of the continuing-violations doctrine in this case is misguided. The Court is unpersuaded by Defendants' reliance on the holding of *Garcia* and other case law to support a finding that the statute of limitations begins to run at the termination of a *specific* discriminatory practice or "discrete act"—i.e., the origination of a single loan. In *Garcia*, there were no allegations of a pattern or practice of discrimination. *Garcia* involved a design-and-construction defect, and the Ninth Circuit held that the statute of limitations began to run at the time construction was completed and not when the plaintiffs encountered or discovered the defect. 526 F.3d at 462–66. The facts and holding of that case are totally inapposite to the allegations at bar. The same goes for Defendants' citation to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), which involves allegations of employment discrimination brought by an employee and not discrimination under the FHA.

In this case, L.A. is alleging a pattern and practice of "discriminatory lending" on the part of Defendants over at least an eight-year period. While the types of loans that Defendants allegedly issued to minority borrowers may have changed during the relevant time period, L.A. alleges that they remained high-risk and discriminatory. This is sufficient to apply the continuing-violation doctrine. *See O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 875 ("[I]f a discriminatory act takes place within the limitations period and that act is related and similar to acts that took place outside the limitations period, all the related acts—including the earlier acts—are actionable as part of a continuing violation.")

Finally, the Court notes one additional argument raised by Defendants with respect to the statute of limitations. According to Defendants, L.A. was on notice of their claims back in November 2011 when the Los Angeles City Council made a motion to invite a law firm to present proposed FHA litigation against "several large banking institutions." (MTD 19:1–14; RJN Ex. 14.) By filing the Complaint two years and one month after that motion, Defendants apparently contend the statute of limitations has expired. But the Court is unpersuaded that this "notice limitation" precludes application of the continuing violation doctrine. *See Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 824 n.13 (9th Cir. 2001) (holding that a strict notice limitation has never been the "litmus test" for application of the continuing violation doctrine). Moreover, the city-council motion and attached documentation does not mention the specific lending institutions that L.A. could pursue FHA litigation against. There is no mention of L.A.'s potential claims against the specific Defendants in this action. Thus, the Court finds that the city-council motion is insufficient evidence on its own to demonstrate that L.A. was on notice of its claims against Citi in November 2011.

For all of these reasons, the Court finds that L.A.'s FHA claim falls within the statute of limitations based on the allegations in the Complaint.

/ / /

**D.      Failure to State a Claim Under the FHA**

Defendants also argue that L.A.'s FHA claim fails because L.A. has not properly alleged a pattern or practice of discrimination.  Defendants contend that L.A.'s allegations are insufficient to establish disparate treatment and that a disparate-impact theory of liability is not available under the FHA.

**1.      Disparate Treatment**

Discriminatory intent or motive is a necessary element of any disparate treatment claim under the FHA.  *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (requiring allegations of discriminatory intent in a disparate treatment claim under Title VII); *Gamble v. City of Escondido*, 104 F.3d 300, 304–05 (9th Cir. 1997) (holding that the elements of Title VII discrimination claims, including allegations of disparate treatment, are the same as the elements for FHA discrimination claims under Title VII).

According to Defendants, L.A. has failed to plead that Defendants' allegedly discriminatory lending practices were intentional or racially motivated.  (*See* MTD 20:11–21:10.)  But the Court finds no fault with L.A.'s ample allegations in the Complaint under a theory of disparate treatment.  As L.A. points out, the Complaint is rife with allegations that Defendants targeted minority borrowers for unfair loan terms based on race or national origin.  (*See, e.g.*, Compl. ¶¶ 11–12; 55–86.)  Moreover, a discriminatory pattern can be probative of motive, and the Complaint contains numerous allegations of statistical patterns of discrimination.  *See Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985) (stating that statistical evidence may be probative of motive).  Accordingly, the Court finds that L.A.'s FHA claim under a theory of disparate treatment is sufficient at the motion-to-dismiss stage.

**2.      Disparate Impact**

Next, Defendants argue that the Court should find that disparate impact is not a viable legal theory under the FHA.  (MTD 21:22–22:6.)  Defendants rely on the Supreme Court's plurality opinion in *Smith v. City of Jackson, Mississippi*, 544 U.S.

228 (2005).   But the Court is unpersuaded.   Not only were the justices squarely divided on the disparate-impact issue, but *Smith* involved an Age Discrimination in Employment Act claim under Title VII as opposed to an FHA claim under Title VIII. Moreover, the Ninth Circuit has explicitly recognized disparate-impact claims under the FHA subsequent to the *Smith* decision along with other circuits.   *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010); *see also Graoch Assoc. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 392 (6th Cir. 2007); *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007).

Defendants also argue that L.A. has failed to plead specific facts to support a disparate-impact theory of liability.   (MTD 22:7–27.)   But the Court finds that L.A.'s allegations are more than sufficient to survive the instant Motion to Dismiss on a disparate-impact theory.   The allegations are specific to Defendants and their lending practices in Los Angeles.   (*See, e.g.*, Compl.   ¶¶ 68–70, 86–112, 136.)   Defendants' arguments are more appropriate for a later stage in the litigation after L.A. has had the benefit of discovery.

**E.   Restitution**

Turning to L.A.'s second claim for restitution, Defendants argue the claim should be dismissed for three reasons: (1) there is no freestanding cause of action for restitution in California; (2) no benefit has been conferred, which is a prerequisite to restitution; and (3) the claim is barred by the statute of limitations.   (MTD 23:7–28:8.)

California courts have stated that "[t]here is no freestanding cause of action for 'restitution' in California." *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("There is no cause of action in California for unjust enrichment.   Unjust enrichment is synonymous with restitution.").   But the inquiry goes beyond that broad statement because courts in California are actually divided as to whether a claim labeled as "restitution" or "unjust enrichment" should proceed. *See Ohno v. Yasuma*, 723 F.3d 984, 1006 n.25 (9th Cir. 2013) ("The Supreme Court of California and California

1  Courts of Appeal have recognized actions for relief under the equitable doctrine of
2  unjust enrichment.")   The difference in opinion rests on whether the plaintiff has
3  properly pleaded a claim for quasi-contract—that the defendant has been unjustly
4  enriched at the expense of the plaintiff—regardless of the label or title the plaintiff
5  puts on the claim.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-
6  1827 SI, 2011 WL 4345435, at *3–4 (N.D. Cal. Sept. 15, 2011) (allowing unjust
7  enrichment claim to proceed where the plaintiff invoked a valid theory of recovery).
8  Thus, the Court will not dismiss L.A.'s claim for restitution based solely on its label
9  and instead reviews the Complaint to determine whether L.A. has alleged a valid
10  theory of recovery.

11      To seek restitution, L.A. must allege that Defendants were unjustly enriched at
12  L.A.'s expense.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004).

13          Under the law of restitution, an individual is required to make restitution
14          if he or she is unjustly enriched at the expense of another.  A person is
15          enriched if the person receives a benefit at another's expense.  However,
16          the fact that one person benefits another is not, by itself, sufficient to
17          require restitution.  The person receiving the benefit is required to make
18          restitution only if the circumstances are such that, as between the two
19          individuals, it is *unjust* for the person to retain it.

20  *Id.* (internal citations and quotations omitted); *see also Durell*, 183 Cal. App. 4th at
21  1370 (quoting *McBride*).

22      Here, L.A. contends that the benefits it conferred on Defendants are the so-
23  called "externalities"—the costs of harm caused by Defendants' discriminatory
24  lending that L.A. has had to shoulder.  (MTD Opp'n 22–23; Compl. ¶¶ 148–49.)
25  "Unjust enrichment arises not only where an expenditure by one party adds to the
26  property of another, but also where the expenditure saves the other from expense or
27  loss."  *White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816, 829 (N.D. Ohio Mar. 14,
28  2000).  This Court, in line with similar decisions from trial courts across the country,

finds that L.A. has properly alleged a benefit to state a theory of recovery for restitution.   *See id.* (allowing unjust-enrichment claim where city sued gun manufacturer for failing to incorporate safety devices into handguns and negligent marketing practices); *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *18 (Mass. Super. Ct. July 13, 2000) (sustaining unjust-enrichment claim at pleadings stage based on "externalities" that the city covered due to gun manufacturer's actions); *City of N.Y. v. Lead Indus. Ass'n, Inc.*, 190 A.D. 2d 173, 177 (N.Y. App. Div. May 13, 1993) (allowing restitution claim for "reasonable costs of [lead] abatement" to survive motion to dismiss).

With respect to Defendants' statute-of-limitations argument, the Court finds that, for the same reasons discussed above, the continuing-violations doctrine also applies to L.A.'s restitution claim.   *See Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1198 (2013) ("Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.").

For these reasons, the Court finds that L.A.'s second claim arises under a theory of quasi-contract and is sufficiently plead to survive the present Motion to Dismiss.

**F.   Injunctive Relief and Punitive Damages**

Defendants also move to dismiss L.A.'s allegations of entitlement to injunctive relief and punitive damages.

According to Defendants, L.A.'s allegations of ongoing activity lack the specificity required to seek injunctive relief.  (MTD 24:10–14.)  But the Court finds that Defendants' argument relies on a selective reading of the Complaint.  There are numerous allegations of a *continuing* pattern or practice of discriminatory lending. (Compl.  ¶¶ 2, 4, 88, 94, 103, 137.)  Moreover, Defendants support their argument with a citation to a single unpublished case where a court dismissed a pro se plaintiff's request for injunctive relief.  *Bickle v. Doe 1–9*, No. SACV 13-0911-DOC(JPRx),

2013 WL 3878976, at *6 (C.D. Cal. July 26, 2013) (involving a pro se plaintiff contesting a traffic ticket on behalf of himself and "members of the public"). The Court finds no basis for dismissing L.A.'s requested injunctive relief.

Defendants also argue that the Complaint lacks sufficient allegations to support an award of punitive damages, which requires a showing of "reckless or callous indifference to the fair housing rights of others." (MTD 24:15–22.) But the Court is satisfied with L.A.'s allegations to support punitive damages, which include allegations of intentional discrimination. (*E.g.*, Compl. ¶¶ 11, 14, 18, 29, 140, 146.) Of course, L.A.'s allegations supporting a punitive-damages award—as with all of L.A.'s allegations—will be put to proof at a later stage in the litigation.

**F.     Rule 8—Distinguishing Between Defendants**

Defendants' final argument with respect to the Motion to Dismiss is that the Complaint fails to satisfy the requirements of Rule 8 because L.A. does not make defendant-specific allegations. Defendants contend that the only defendant-specific allegations pertain to CitiMortgage. (MTD 24:24–25:17.) But L.A. argues that the allegations regarding parent and subsidiary relationships and allegations of agency are sufficient to meet the pleading standards. (MTD Opp'n 25:3–21.)

Parent companies may be liable for their own unlawful acts and the unlawful acts of subsidiary companies that act as their agents. *See Bestfoods*, 524 U.S. at 64–65; *Doe v. Unocal Corp.*, 248 F.3d at 926. Here, L.A. makes detailed and very specific allegations with respect to CitiMortgage. (Compl. ¶¶ 24, 56–60, 73–74, 82–84.) Moreover, L.A. also alleges that Citibank, N.A. owns CitiMortgage as an operating subsidiary, and Citigroup is a financial institution that owns and controls Citibank, N.A. (*Id.* ¶¶ 22–23.) There are also allegations that each Defendant acted as agent of the other Defendants and ratified and adopted their acts or omissions. (*Id.* ¶ 30.) The Court is satisfied that the allegations in the Complaint are sufficient under Rule 8(a) to put all five Defendants on notice of L.A.'s asserted claims and entitlement to relief and survive the instant Motion to Dismiss. *See, e.g.*, *Reyes v.*

*Premier Home Funding, Inc.*, 640 F. Supp. 2d 1147, 1160 (N.D. Cal. June 17, 2009) (finding general agency allegations sufficient but dismissing on other grounds); *Cuevas v. Atlas Realty/Fin. Servs., Inc.*, No. C 07-02814 JF, 2008 WL 268981, at *4 (N.D. Cal. Jan. 30, 2008) (holding that general agency allegations between lender and mortgage broker were sufficient); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774-MMM(CWx), 2006 WL 4749756, at *29 (C.D. Cal. Sept. 25, 2006) (holding that general agency allegations are sufficient under Rule 8(a)).

## G.   Motion to Strike

Finally, the Court briefly addresses Defendants' Motion to Strike.  Defendants identify numerous paragraphs in the Complaint that they contend are impertinent, immaterial, or scandalous.  "'Impertinent' matter consists of statements that do no pertain, and are not necessary, to the issues in question."  *Fogerty*, 984 F.2d at 1527. "Immaterial" matter "has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Id.*  "Scandalous" matter "bears no possible relation to the controversy or may cause the objecting party prejudice."  *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

The Court has reviewed the paragraphs identified by Defendants and find that none rise to the level of being impertinent, immaterial, or scandalous under Rule 12(f). Every paragraph relates in some way to mortgage-lending practices.  The paragraphs that are not specific to Defendants' lending practices or Los Angeles serve a contextual purpose that the Court finds entirely proper.  Defendants' arguments in the Motion to Strike would be more appropriate at a later stage in the litigation in the form of evidentiary objections.

/ / /

/ / /

/ / /

/ / /

/ / /

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion to Strike.  (ECF Nos. 29, 30.)  Defendants shall file their answer to the Complaint within 14 days.

**IT IS SO ORDERED.**


June 9, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**